ANDREZEZ ZYGMUNTOWICZ *vs.* AMERICAN STEEL AND WIRE COMPANY OF NEW JERSEY.

Suffolk.    November 7, 1921. — March 1, 1922.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Agency,* Existence of relation, Employer's liability for intentional tort of agent. *Workmen's Compensation Act.    Assault and Battery.    False Arrest and Imprisonment.    Malicious Prosecution.    Evidence,* Competency, Relevancy and materiality.

A declaration in an action of tort by an employee in a factory against his employer, a manufacturing corporation, contained three counts, the first for personal injuries resulting from assault and battery, the second for false arrest and imprisonment and the third for malicious prosecution. At the trial there was evidence warranting the following findings: The plaintiff, who had been employed by the defendant as a stationary engineer, late on a Saturday afternoon during the period of the world war was discharged by the defendant's superintendent, who told him to take his clothes and go home. The plaintiff protested against his discharge, but took his clothes and walked to the pump house, where the numbered brass checks of the employees were hung. It was necessary for a workman to have his check in order to enter, and, perhaps, to leave the mill premises. When the plaintiff reached for his check, the superintendent, who had followed him, called to an employee of the defendant, who was standing by the check rack, not to let him have his check and to hold him. The employee and the superintendent then seized the plaintiff and threw him down. The employee saw a revolver in the plaintiff's pocket, and either took it out or picked it up from the doorway where it had fallen. Two others, employed by the defendant as watchmen, who, by reason of the necessity of special precautions during the war, had been appointed special police officers by the city where these events took place, took the plaintiff, put handcuffs on

him, carried him to the gate, and sent for the city police patrol wagon. One of these special police officers had been in the defendant's employ for thirty-five years and was at the head of thirty or forty watchmen employed by the defendant. The plaintiff then was taken to the police station, where he was confined for some hours. On Monday morning he was tried in the district court upon two complaints, made by the deputy chief of police upon information furnished by the special police officer above described, one complaint being for "disturbing the peace," and the other charging that he "while so disturbing the peace and when so arrested was armed with and had on his person a pistol." There was no complaint for violation of St. 1911, c. 548, § 2. The superintendent and the special policeman appeared in court as witnesses at the trial. The plaintiff was discharged. The defendant was a subscriber under the workmen's compensation act and the plaintiff had not reserved his rights at common law. *Held,* that

(1) The personal injury resulting from the assault and battery arose out of and in the course of the plaintiff's employment, and in the circumstances his sole remedy therefor was under the workmen's compensation act;

(2) Since it might have been found that the special policemen, who were employees of the defendant, in taking him into custody were acting as the agents of the defendant and not as representing the public for an injury done the public at large, a verdict for the plaintiff on the second count was warranted;

(3) A charge to the jury, that, if the special police officer falsely arrested or imprisoned the plaintiff, the defendant was responsible, regardless of whether the officer acted as employee or as public police officer, was erroneous;

(4) Since a finding was warranted that the prosecution of the plaintiff was set in motion by persons acting for the defendant and not for the public interest, and without probable cause, a finding for the plaintiff on the third count was warranted;

(5) A charge to the jury that, if the special police officer, upon whose information the charge against the plaintiff was made, was guilty of malicious prosecution of the plaintiff, then the defendant was responsible therefor as a matter of law, was erroneous;

(6) No harmful error was committed by admitting in evidence the complaints and records of discharge of the plaintiff in the district court, since, although not admissible under the second count, they were admissible under the third count.

TORT, with a declaration in three counts, described in the opinion. Writ dated January 15, 1919.

In the Superior Court, the action was tried before *Aiken,* C. J. Material evidence and exceptions saved by the defendant are described in the opinion. The jury found for the plaintiff on the first count in the sum of $250, on the second count in the sum of $150 and on the third count in the sum of $250; and the defendant alleged exceptions.

*F. F. Dresser,* (*J. A. Crotty* with him,) for the defendant.

*T. F. J. Callahan,* for the plaintiff.

DE COURCY, J.   The jury found for the plaintiff on each count in the amended declaration; the first being for assault and battery, the second for false arrest and imprisonment, and the third for malicious prosecution.   On the evidence most favorable to him the following facts could be found.   Zygmuntowicz had been in the employ of the defendant for some years as a stationary engineer.   Late in the afternoon of Saturday, June 23, 1918, his superintendent, Edward J. Gilbert, discharged him and told him to take his clothes and go home.   The plaintiff protested against his discharge, but took his clothes and walked to the pump house, where the numbered brass checks of the employees were hung. It was necessary for a workman to have his check in order to enter, and perhaps to leave the mill premises.   When the plaintiff reached for his check, Gilbert, who had followed him, called to Anton Johnson, who was standing by the check rack, not to let the plaintiff have his check, and to hold him.   Johnson and Gilbert then seized him, and threw him down.   Johnson saw a revolver in the plaintiff's pocket, and either took it out, or picked it up from the doorway where it had fallen.   Robert Edwards and Carl G. Nelson, employed as watchmen by the defendant (and who had been duly appointed special police officers by the city of Worcester), put handcuffs on him, carried him to the gate, and sent for the city police patrol wagon.   The police officer took him to the police station, where he was confined for some hours.   On Monday morning he was tried in the district court upon two complaints, made by the deputy chief of police, one for "disturbing the peace," and the other charging that he "while so disturbing the peace and when so arrested was armed with and had on his person a pistol."   Gilbert and Edwards appeared in court as witnesses at the trial.   The plaintiff was discharged.

1. As to the first count, the claim of the defendant, raised by requests for rulings, is that the plaintiff's sole remedy for physical injury, if any, is under the workmen's compensation act.   That act (G. L. c. 152, § 24) provides: "An employee of an insured person shall be held to have waived his right of action at common law to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right."   As was said in *King* v.

*Viscoloid Co.* 219 Mass. 420, 422, "It was undoubtedly the intention of the Legislature by that statute to take away from employees who should become subject to its provisions all other remedies that they had against their employers for injuries happening in the course of their employment and arising therefrom, and to substitute for such remedies the wider right of compensation given by the act." See also *Panasuk's Case*,. 217 Mass. 589, 592; *Young* v. *Duncan*, 218 Mass. 346, 349; *White* v. *George A. Fuller Co.* 226 Mass. 1. It is settled that injury caused by an assault upon an employee, which arises out of and in the course of his employment, falls within the act. *McNicol's Case*, 215 Mass. 497. *Reithel's Case*, 222 Mass. 163. *Harbroe's Case*, 223 Mass. 139. *Cranney's Case*, 232 Mass. 149.

It is agreed that at the time of the alleged injury to the plaintiff the defendant was a subscriber under the workmen's compensation act, had insured its liability thereunder, and given due notice thereof; that said insurance was in full force and effect; and that the plaintiff had not reserved his rights at common law. The assault occurred in the course of the plaintiff's employment. He was on the premises of his employer, objecting to his discharge, and in the act of getting his identifying check, with which to enable him to leave and enter the premises. *Bell's Case*, 238 Mass. 46, and cases collected. And on the facts disclosed by this record, it could be found that the assault arose out of his employment. The entire trouble was incidental to his work. Gilbert and Johnson were acting in their capacity of employees; and the jury must have found that they were acting within the scope of their employment, in order to reach their verdict. He was not charged with carrying a concealed weapon under St. 1911, c. 548, § 2 (see now G. L. c. 269, § 10). As the injury embraced in the first count arose out of and in the course of the plaintiff's employment, the trial court was in error in denying the defendant's motion for a directed verdict on that count, and the requests for rulings to the same effect.

2. What has been said disposes also of the second count so far as it charges an assault. This count is concerned mainly with the alleged false arrest and imprisonment. As to these the contention of the defendant is that Edwards and Nelson were acting as special police officers. The general rule is that in the absence

of statute, a private person or corporation is not responsible for the acts of a special police officer, appointed by public authority but employed and paid by the private person or corporation, when the acts complained of are performed in carrying out his duty as a public officer. But where he is acting in performance of the duties for which he is employed, or his movements are actively directed by his employer, in other words where he represents his employer and not the public, such employer may become liable for his acts. *Armstrong* v. *Stair*, 217 Mass. 534. *Clish* v. *Boston, Revere Beach & Lynn Railroad*, 219 Mass. 341. L. R. A. 1915 C 1183 note. It appears that Edwards was sent for by Gilbert. He had been employed by the defendant as a watchman for thirty-five years; and was head watchman since 1913. He was first appointed a special police officer about twenty years ago; and both he and Nelson were so appointed in January, 1918. It was in testimony that the duties of the watchmen were to patrol the plant, and look out for fires and disorders; and during this war period extra precautions were taken. On the evidence it was a question of fact for the jury whether Edwards and Nelson unlawfully took the plaintiff into custody and restrained his physical liberty; and, if so, whether they were acting as the agents of the defendant, and not representing the public for an injury done to the public at large. Although the evidence tending to prove that the defendant authorized or directed the arrest by its watchmen was meager, we are of opinion that the judge rightly refused to direct a verdict, or to rule that the plaintiff could not recover on the second count. There was error, however, in charging the jury that if Edwards falsely arrested or imprisoned the plaintiff, the defendant was responsible, regardless of whether Edwards acted as employee or as public officer. The exception taken thereto must be sustained.

3. There was evidence that the complaints in the district court were made by McMurray, deputy chief of police of Worcester, upon information furnished to him by said Edwards. The latter also told the city police officer who came with the patrol wagon "what the plaintiff had done;" that there had been a disturbance and that the plaintiff was carrying a revolver. Edwards and Gilbert were at the district court as witnesses. On all the evidence it was for the jury to decide whether Edwards,

who was at the head of the force of thirty or forty watchmen employed by the defendant during the war, caused officer McMurray to institute criminal proceedings against the plaintiff; and whether in so doing he was acting within the scope of his authority. *Mason* v. *Jacot,* 235 Mass. 521. *Armstrong* v. *Stair, supra.* Ann. Cas. 1913 D 112 note. Nor can we say as matter of law that the agent or agents of the defendant in setting in motion the prosecution of the plaintiff, acted with probable cause and without improper motives. That issue was for the jury, on conflicting evidence as to the facts. *Casavan* v. *Sage,* 201 Mass. 547, 553. *Jones* v. *Schein,* 215 Mass. 586. See *Desmond* v. *Fawcett,* 226 Mass. 100, 103. The judge rightly refused to direct a verdict for the defendant on this third count. He was in error however in charging that if Edwards was guilty of malicious prosecution of the plaintiff then the defendant was responsible therefor, as matter of law. The exception to this instruction must be sustained. *Mason* v. *Jacot, supra.* *White* v. *Apsley Rubber Co.* 181 Mass. 339.

No harmful error appears in admitting in evidence the complaints and records of discharge of the plaintiff in the district court. They were not admissible under the count for false imprisonment, because *res inter alios.* *Fitzgerald* v. *Lewis,* 164 Mass. 495. But under the count for malicious prosecution an authenticated copy of the record was admissible to prove, among other things, the termination of the prosecution. *Bacon* v. *Towne,* 4 Cush. 217. *Stone* v. *Crocker,* 24 Pick. 81. See *Tillotson* v. *Warner,* 3 Gray, 574.

*Exceptions sustained.*